May it please this Court, my name is Dale Trimble and I represent David Sellers in a case being brought from the U.S. District Court in Houston, David Sellers v. Minerals Technologies, Inc., and Setco Energy Services Company, LLC. Issues for review that we brought in this case is whether the evidence was presented at summary judgment necessary to support the order that we believe was factually insufficient and that a material fact existed as to whether the subject employment agreement between Mr. Sellers and Setco could be interpreted as having a condition that allowed Setco to terminate without cause Mr. Sellers 29 days before the benefits. Did you argue that the provisions of the agreement were ambiguous? Did we argue that? No, we did not argue that in our brief. That was based on the testimony of Mr. Sellers in his deposition. Looking back though, if I had to say otherwise, I would say yes, I think there are inconsistencies in the agreement and that I think the agreement should have been written in a different manner. The evidence is also factually insufficient. I say it should have been, I mean clearly you say it should have been written in a different manner, but that's a completely different thing from whether you interpret it according to the four corners of the document or whether you say it's ambiguous. That's correct. I don't think I'll be mentioning that in this argument, but obviously there are some inconsistencies within the four corners and we would like to bring that to light. Primarily one, section three of the agreement is in section, conflicts we believe with section 11. Section three is compensation, section three is termination. Section 11 is, well section three covers termination, but not without cause. You just said section three, and then section 11 governs without cause. Without cause is mentioned in section 11. Right, and we all agree that this was without cause, so we need to figure out what happens between section three and section 11. That's right. I agree with that. I believe that's where this comes down upon. Do you agree that the condition precedent is unambiguous? The condition precedent is? In three, in section three is unambiguous. No, I do not agree that it's unambiguous. I think that an ambiguity does exist. The condition that has been expressed is that the employee has to be employed on the date certain, on the terminative date, in order to receive the benefits. The section goes on to state, though, that here are the exceptions, here are the exclusions to the condition, okay, if you're terminated with cause or you resign. To me those are kind of redundant because in neither case would you be employed prior to that date. Nevertheless, there are exceptions to that exclusion, and they state that the employee has either been disabled during the course of his employment or has died during the course of employment, in which case they would determine a date within 60 days from the date of that death or disability determination prior to the termination date and make a pro rata award of the LTI benefits. There's no mention in section one to state what would happen in the event the employer were to terminate the employee without cause. What date was your fellow fired? 29 days prior to the date of termination, which would have been January 18th, or it was... 29 days? It was 29 days. The contract said that that notice was to be 30 days. It was one day short, and there was payment made in lieu of notice after that. Why didn't you argue that he was therefore not gone on the date, on the 18th? I believe he was. I believe that was the date. He was, in fact, employed, except he wasn't working during that time, but was paid throughout that... That's what I'm saying. How come you didn't make an issue of that? I think we did to say later on that he was paid through the termination date, and he was paid through the termination date, and... That's my point. Then he was... You could argue that he was on the payroll on the date on which he had the right to the entire bonus. Yes, Your Honor. Could have done that. Could have done that. What we do know is that when he was terminated, paid in lieu, because the 30 days had not been met, it went beyond that time that he was actually, in fact, paid. When we talk about Section 11, though, which talks about termination, that paragraph there says when there's termination without cause, that the employee will be paid through the termination date, and also receive any commissions and LTI benefits, period, pursuant to Section 3, period. Then it goes on to talk about release in order to get COBRA benefits, which we are not arguing today, and other benefits, too, that don't have anything to do with the condition of Section 1. We do have that, where that condition is not precipiced upon the fact that he is not employed on the date of the termination date. So you've got those two... It's like the problem is the reference back to paragraph 3. It references back to paragraph 3. Yes, it does. And so you go back to paragraph 3, and it is hard to read paragraph 3 along with paragraph 11d. It just really is, because it's almost like they will go back and forth. Now, what the Court has said is that Condition 1, or the condition of Section 3, is what should control. We've looked at the case law, we've cited the case law in our brief, and basically, I think the most effective case that I found, or the most explanatory case, is that in circumstances such as this, the Court looks for a translation that would relate this to be a covenant as opposed to a condition. There's no question in this case that Mr. Sellers worked five years, less than 29 days, if we want to argue that. And he was entitled to 5% of the net value of the projects that he worked on, or generated, or had something to do with with regard to the benefit of SECCO. We're talking here about, if I read correctly, between $400,000 and $500,000? Is that the value? That would have been the 5% value. When you look at what the actual worth of his assignment was, and what he was able to generate for the company in that time, that would have been $8,573,634, which would have been the 100%, the 5%, would have been the $428,681.71 that we both parties agreed would have been available. So we could have argued also quantum merit on that, but basically, those, as we went along trying to decide what the value of the LTI would have been for Mr. Sellers alone versus what it would have been for the company got, that's what it comes down to. What do you contend is the date of his termination? I believe the date of his termination is January 18th, which is what the contract says. Based on the 30 days provision? Based on the failure of the 30 day notice, and then the payment subsequently made in lieu thereof. In all due respect, Your Honor, that's what I think is the basis of what it comes down to, those two sections. I think the enforcement of the condition, as it were, which results in a forfeiture, shows almost allow, would allow one to argue it's a contract of adhesion because the employer holds all the leverage here. If Mr. Sellers had made an election to resign prior to this date, he would have been out the benefits, regardless of how long he had worked. If he had been fired for cause, he would have been out the benefits. That's stated in Section 11 under both termination for cause and resignation. You're not going to get the benefits if you do this prior to the termination date. With regard to disability and death, it's pro rata. It's not denied simply because you're not around or you're because of death or you're unable to work because of disability, but you're entitled to recover the LTI based upon the time you were employed, which I think could be determined by the company and by the estate or by the disabled employee. Here, where it talks about if you're terminated without cause, which suggests that's the employer's decision, then the employee is going to get termination plus commissions and LTI benefits. It goes back to Section 3. You go back to that, but I think that's a powerful thing. That avoids a forfeiture where the employer has all the leverage with regard to this contract. In closing, I'll say yes, I agree that this contract could have been written in a better way and probably wouldn't have had the need to be here today, but we have what we have. We do have the two sections that compete and we do have the law that has been provided to us that forfeiture is not favored, particularly if it involves, shows there's no question that the work was done, that the benefits were derived by the company, and that the employee, in this case, David Sellers, fulfilled his obligation. Thank you very much. Thank you. Thank you, sir. Mr. Odom. May it please the Court, I'm Travis Odom here on behalf of FLE's Minerals Technologies and Setco Energy Corporation. The judgment of the District Court below should be affirmed for three principal reasons that I want to talk about today. First, because the employment agreement contains an unambiguous condition proceeding that Mr. Sellers had to be employed on January 18, 2015, in order to be entitled to the LTI benefit. Second, the case law and the rules on which Mr. Sellers relies to argue that he should receive a pro rata share of the LTI benefit those case laws represent a rule of construction that does not apply in the face of an unambiguous contract. And third, Mr. Sellers' extrinsic evidence should not be considered, but even if it is, it's not competent summary judgment evidence. So first I want to turn to the agreement and talk about it. Section 11 defines five ways that Mr. Sellers' employment could terminate. There's for-cause, termination, there's resignation by the employee, death, illness or disability, and termination without cause. Termination for-cause and termination by employee both contain language. Those are 11C and 11E that say employee will not receive any long-term incentive. If you look to 11A, B, and D, those provisions each state that the long-term, that the employee will receive the long-term incentive that's due pursuant to Section 3. So to determine what long-term incentive is due, we look to Section 3C, which addresses the LTI, and the first sentence of 3C is that unambiguous condition. It's stated in a classic if-then construction. If the employee is still employed on January 18, 2015, then after that date but before March 15, 2015, employee shall receive and then goes on to describe. We agree that without cause means that it's a unilateral action by the employer who just says for no reason whatsoever we no longer need your services with the company. And that can be invoked at any point in time that they feel like they don't need his services. Isn't that a fair statement of without cause? That is fair, Your Honor. And so that would afford the employer under your reading of the contract a unilateral way to defeat the condition precedent without any failure on behalf of the other party to the contract. Is that also a fair reading based on what you're arguing? That's fair, Your Honor, and it's up to the parties to decide if they want to agree to that or not. And I would point you to the NBAR versus Gray, sorry, I've lost my, sorry, Coleman versus Gray bar, pardon me. It's an old case from the Fifth Circuit where the court looked at an agreement and decided to apply the rule that you see in Miller versus Riata and Starr in those cases. It looked at an agreement and said, we don't think we're going to assume that the employer reserved the right to terminate this employment relationship at any time and cut off the right to the incentive, but the parties could do that if they wanted to, and they stated it clearly. And the court said if such was the result intended by the parties, it should have been expressed in terms so  the question I would have for you is, what do you contend was his termination date? I'm not sure that the summary judgment record is clear on that. I think it was probably important, though, if it's not clear on it. I mean, that's kind of the pivotal question for the condition precedent, isn't it? Well, the termination date was December 19th or did he receive that that was the termination date? He received a packet from Setco. I think he received it on December 20th. That's what Mr. Seller's affidavit states. Okay, and what about the language in paragraph 11, I believe, regarding the 30 days? Well, he's entitled to 30 days' notice unless the company chooses to give him pay in lieu of notice, and that's what happened in this case. He was given 30 days' pay, which amounted to, I think it was $14,000 or so, and he admits to receiving that. That's in the record at page 25. Okay, so you're saying that that's a clear provision as well, that if I just give him 30 days' pay, I don't have to give him any notice whatsoever. I just give him 30 days' pay, and then I as the employer count that as the date of termination? Yes, Your Honor, pay in lieu of notice. Okay, we have to give him some notice. I mean, he's got to know, don't come back on Monday. Right, but in lieu of the 30 days, they're entitled to give him 30 days' pay, and that's what the company did, and Mr. Seller just admits as much. So when we look at 3C, we've got the 30, he gets the money in lieu of it. Why isn't it reasonable to construe that he actually gets, you know, sort of was there January the 15th or 18th? Why wasn't he still there on the 18th? If he got 30 days' pay, was he removed from his office? Was he escorted out of the building on the 20th, never to return? His employment was ended as a... Was he? That's not the question I asked. I can't tell you if he was escorted out. I don't know. It seems unlikely given the position that he held. It's not in the summary judgment record. I don't know, Your Honor. I can tell you that he was not still with the company as of January 18th, the date that... Why do you say that? On what basis do you say that? Because immediately after he received the notice of termination, they started the back and forth letter writing campaign about what he would be owed. Well, that doesn't waive his rights under the contract. No, I didn't say that it did, Your Honor. Well, then you... But you've just affirmatively stated that he was not, quote, at the company on January 18th, and I asked for the factual basis. Your Honor, I can't point you to anything in the record that would show that definitively. Well, in a contract that has a huge hammer leverage of the employer to terminate him without cause in order to keep from paying him the money, the money of which was in reserve and available to pay him, and the employer opts not to give him notice but to pay him 30 days. Why is it reasonable to construe this that, in fact, the 30-day payment rendered him there on the 18th, and therefore he was owed the money? Employer could have put in the contract that if we opt to not give you notice and pay you in lieu of that, it shall not be construed as a continuation of employment, et cetera, et cetera. Just like he could have written a better contract, the employer could have put a provision that says, if we don't give you notice and we pay you, you can't use this to argue that you're still there. They didn't do that. Why isn't that a reasonable interpretation of something where both sides didn't put everything in they could have? Your Honor, I think pay in lieu of notice would seem to indicate that the employee is being paid in lieu of notice to get him out of the company sooner than he otherwise would. Well, it's true, but Judge Jones asked you twice, and you don't have the answer to know the answer. It's not a summary judgment record. You don't know the answer, so anything you say is actually speculative one way or another. We're given the contract to construe. We can't say you're wrong, but you said to her twice or to us that you don't know the answer. Judge Stewart, in David Sellers' affidavit at page 262 of the record, he says, Setco terminated me without cause on December 20, 2014. I get that. I know that that's in there, but we also know that the contract provides that the employee is entitled to notice. In lieu of getting notice, the employer can opt to pay him a 30-day payment, so they pay them in lieu of the notice. Given no express provision in the contract that says doing so can't trigger him constructively being there for purposes of disbenefit, the question is just, what's the best case you have that says that can't be the case? He argues the Texas Supreme Court cases that disfavor forfeiture and say treat it as covenant, so just ask him. First of all, Your Honor, 11D is not the section that the appellees contend is the condition preceding. Well, we're interpreting the contract, and we have as much right to interpret the contract as they do, and I'm not sure I'm persuaded by your argument that his affidavit amounts to a legal concession about what the contract was. I mean, any layman would say, well, they fired me on December 20th because they gave him some kind of packet, and then later on they probably were working on their interpretation of the contract and decided to give him the pay, but I don't see this as a judicial admission, which is sort of the way you're treating it. I thought that your question initially was on what date was Mr. Sellers no longer an employee. That was several minutes ago. I'm trying to keep up. And then more recently you cited to us as if it were an adverse admission his affidavit which said he was terminated on December 20th, and I'm responding to that by saying I don't think that's a judicial admission in regard to the interpretation of a contract, which is a legal issue. See what I'm saying? Yes, Your Honor. Okay. If I understand your question correctly, you're asking for what case law I have that says that an employee either is or is not employed during the period for which they're paid in Texas? Is that right? If you had a case in point, it would be helpful, but otherwise we've just got this contract before us, and we have the most, I think, I guess it's the most recent expression of the Texas Supreme Court, which Judge Hughes cited, which is that Criswell case. Your Honor, I don't have a case on point as to whether an employee is employed during the period for which they're paid in lieu of notice. I did look. I was not able to find anything. But he's on the payroll. Whether he's physically in the building after December 20th or not, wouldn't you agree that he is on the payroll of the company for 30 days, whether he's given the notice and continues to work out the 30 days, or whether he's paid in lieu of notice, he is on the payroll as an employee up through the end of the 30 days? I would not concede that, Your Honor. Okay. He got a final paycheck. But he got to work for a period of time that extends 30 days. I mean, he didn't get paid for work he already did. He got paid for 30 days' work. Whether he's there or not, whether the company tells him, get a cardboard box, put your things in it, and get out, he's getting paid. He's on the payroll of the company for 30 days from the date that happens, which we know, I think you said, was December 20th. Isn't that correct? Again, I don't think he's on the payroll. I don't think pay in lieu of notice is the same thing as garden leave, and that's sort of the direction that the court's heading here. Pay in lieu of notice is a means to pay the employee what he would have earned in that time period. I don't think it says anything about whether the employee is still an employee of the company at that time. Well, as I said, you, your employer, could have written something in the contract to directly say that that's not so, but it wasn't. It's not put in there. Just like he could have, you know, put something in more express. As Judge Jones said, we take the contract as it's presented to us to interpret the whole contract. I mean, actually you were trying to give the 30 days not in lieu of notice. In fact, it's not even, it says by giving, employer may terminate employment without cause by giving employee 30 days written notice or in its discretion, pay in lieu of notice. And frankly, grammatically, it's not even obvious to me that 30 days is the amount of pay in lieu of notice. If the person was being paid on a weekly or biweekly basis, it seems that the 30 days, but so you can also argue that shall be in the following sentence to the date such notice is effective. Well, if he got 30 days pay standing in for 30 days notice, then it seems reasonable that he was terminated after January 18. Seems reasonable theoretically, probably not to your client. Your Honor, I don't have any case law that addresses your point. Well, of course not, because it's a contract and every contract stands on its own. I'm not sure that this particular argument that you're asking me about has been raised on appeal, though. But we're interpreting the contract. That's what we keep coming back to. We're interpreting the contract. We got the contract. Notwithstanding what was put below, we got the contract. The contract is before us. We get to ask the questions. One says it's ambiguous, it's not, it's this, it's that. But it's on appeal to us to construe the contract. You agree with that, right? I do, Your Honor. We get asked all the time by parties for us to tell them what they agreed to when they entered the contract. We weren't there. But we get tons of these cases presented to us where we have to construe the contract within the bounds of statutory construction. We're not reaching, but when you give it to us, we try to construe it where it has meaning, et cetera, et cetera. That's all. Let me go back to the facts. Did I understand correctly that your client attempted to give the written notice and then went back and the following day gave the pay in lieu of They sent Mr. Sellers the notice of termination on December the 19th. Okay. And then at some point thereafter did give him the pay in lieu of The following day. Yes, Your Honor. I believe the 20th. Okay. And that pay, just to follow up on Judge Jones's point, that pay was for the 30-day period from that date forward? Or was it for a lesser term? It was for a 30-day period. Okay. In the brief time that I have left, Your Honors, I would like to just point out as far as the case law that we discussed briefly a moment ago, Miller v. Riata and those cases. There was, I think those cases are best understood as expressing a canon of construction rather than a rule of substantive law. And I wanted to share with you, that came together for me when I read the case Wilson v. Noble Drilling, actually the case from the Southern District that was affirmed here at the Fifth Circuit. Judge Gilmore said, applying a general rule of contract construction, the Miller court granted the plaintiff a pro rata part of the bonus for the period he actually worked. However, the court cannot resort to rules of contract construction or interpretation if the written contract is unambiguous, citing to Upshaw v. Trinity, 842 Southwest 2nd, 631. And so, those cases are inapplicable to the extent that we have an unambiguous condition proceeding in this contract, because that supersedes this canon of construction that would afford Mr. Sellers the pro rata share. I see that I'm about out of time, unless anyone has questions. No, thank you. All right, thank you, sir. Thank you. Trimble, will you serve rebuttal? Your Honor, my rebuttal will be very brief. Sitting here, I, listening to opposing counsel, I, that condition that's found in Section 1 on one side, then there is the other, that the employee in this case does the job throughout the term of the employment contract, the five years. And at the end of that time, 29 days before, everything that he's worked for is now denied. Did I understand correctly that your client had the laboring war in this contract, drafting of the contract? He was on his own, but he worked with the chief counsel for AMCOL, A-M-C-O-L, who owned, well, Setco was his subsidiary at the time. MTI, Mineral Technologies, came in later, bought out AMCOL, and Setco became his subsidiary. Okay, I could be wrong. I'm just thinking when you say a contract of adhesion, I contemplate them putting the paper in front of him and saying sign it or not, but here it is, and we don't want to discuss it. And that wasn't quite the circumstance here, though. That wasn't quite the certain case, but he was dealing with a lawyer and wasn't helped by himself. He was doing this on his own and felt like he had the, well, he felt comfortable with the opportunity. And so what we presented in here was, and there were some, the affidavits that had been presented here were primarily to show that the understanding, that the intention of the agreement or the parties was at the end of the five years, he would go on and get his LTI and he would retire. And that was all understood by Mr. Sellers and he believed by the AMCOL, Setco. Obviously they understood it. They tried to shortchange him. At the end, I think that MTI did because that's who the communication came from. And in fact, what we presented was in March of 2015, after he had received the 30 days until the terminate, 30 days to the termination date of January 18th, 2015, he got a letter from Jennifer Momberg of MTI, their chief counsel, and said here's what we'll do. We'll try to work this out. We'll give you $200,000 because we recognize the service you've performed. Okay, that's, you know, take this instead and you sign this release, which was tied to the COBRA benefit as well. He would release all claims if he took COBRA, which he never did for that reason. That was not something that was ever suggested. Is that 30 day check, he cashed that check, right? I believe he did, yes. Is that in the record? No, I don't believe it's in the records. I think it's referenced somewhere in the materials, but I don't think the check is. Not a copy of the check or the receipt or anything? Okay. Yes, ma'am. So I think it comes down to the fact that in the end, he didn't realize that the fact that he was dealing face to face with a different company who's no longer in this case now, and thought he was dealing with, thought that the contract was understood and that he would give his service and then at the end of that time he would get his LTI and it was calculated to be what we've referenced. There's been no disagreement as to that. And so what we're asking this court to do is to make a ruling that would reverse the decision of the district court and either render a decision in favor, an opinion in favor of the contract for the LTI of $428,000 thereupon, or either reverse it and remand it back to the district court for the determination of damages and attorney's fees. All right. Thank you, sir. All right. Thank you to both counsel for your briefing and argument in the case. It'll be submitted and we'll decide it. All right. We call the fourth case.